UNITED STATES of America, Plaintiff-Appellee,

v.

Blanca ACOSTA, Defendant-Appellant.

No. 83–5592.

United States Court of Appeals, Eleventh Circuit.

Dec. 10, 1984.

Hatchett, Circuit Judge, filed dissenting opinion.

Joel Kaplan, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Leonard F. Baer, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

HANCOCK, District Judge:

Appellant Blanca Acosta was a customer service representative at the Westchester, Florida branch of Intercontinental Bank. As part of her duties she would carry customer transactions—funds for deposit or withdrawal slips—from the customer reception area to the teller and return with deposit slips or withdrawn funds for the waiting customers. Appellant also had access to account signature cards and was in charge of "hold mail" accounts whereby account statements would be held for indefinite periods, rather than mailed regularly, for depositors who lived abroad.

After a number of depositors complained about low balances in their accounts, the bank undertook an investigation. All the accounts in question were "no-passbook" savings accounts as to which the depositor could withdraw money without presentation of a passbook. When theft was suspected as the reason for the low account balances, the bank turned the results of its investigation over to the FBI, and appellant's indictment resulted. Appellant was

---

* Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

indicted in three counts for three separate violations of 18 U.S.C. § 656, involving misapplication or embezzlement of funds totaling approximately $24,000 from three different bank accounts.[1] The evidence at trial was sufficient to prove appellant had taken withdrawal slips, forged signatures for account holders and withdrawn money from the accounts by giving the slips to a teller as if the customer were waiting in the reception area. The proof also showed the bank had reimbursed the customers approximately $20,000 of the $24,000 which appellant had improperly taken from the accounts. A jury found appellant guilty on all three counts after a two-day trial. She raises two points on appeal: (1) jury instructions regarding the elements of a section 656 offense authorized the jury to return a non-unanimous verdict, and (2) the evidence was insufficient to prove the offenses charged. Because we find the first point is without merit and further find ample evidence to support the convictions, we affirm.

▮▮▮▮ Count I of the indictment charged that:

On or about December 8, 1980, at Miami, Dade County, in the Southern District of Florida, the defendant,

BLANCA ACOSTA

being an employee of the Intercontinental Bank, Westchester Branch, 8755 S.W. 24 Street, Miami, Florida, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, did knowingly, willfully, and with intent to injure and defraud said bank, embezzle,

abstract, purloin, and misapply monies and funds entrusted to the custody and care of said bank in that she removed $6,448 from said bank; in violation of Title 18, United States Code, Section 656.[2]

The purposes of an indictment are to inform the accused of the charge against him so that he may prepare a defense and to enable the accused to raise an acquittal or conviction as a bar to a subsequent prosecution for the same offense. Count I satisfies these purposes. Furthermore, Count I is not duplicitous even though it charges that defendant willfully embezzled, abstracted, purloined and misapplied the bank's money.[3] In *Fields v. United States*, 408 F.2d 885, 887 (5th Cir.1969), the former Fifth Circuit[4] observed:

... Where a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means is sufficient.

Section 656 of Title 18 embraces but a single generic offense, the offense of willfully *taking* the money of a bank by one of its employees, which offense may be committed in several alternative ways: embezzling (a taking), abstracting (a taking), purloining (a taking) and misapplying (a taking). Appellant Acosta did not question the sufficiency of the indictment in the district court and does not directly challenge the indictment in this court. The challenge is indirect.

▮▮▮▮ Appellant's first issue on appeal is based on the sixth amendment requirement of a unanimous jury verdict to convict

---

**1.** Section 656 states in part:
Whoever ... embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of [a member] bank or any moneys, funds, assets or securities intrusted to the custody or care of ... any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both ....

**2.** Counts II and III are identical with Count I except for dates and amounts, which are December 26, 1980 and $8,904.87 for Count II and December 29, 1980 and $8,575.91 for Count III.

What is said throughout our opinion as to Count I applies equally to Counts II and III.

**3.** "The error of duplicity is present where more than a single crime is charged in one count of an indictment." *United States v. Ramos*, 666 F.2d 469, 473 (11th Cir.1982).

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

in a federal criminal case. *See also* Fed.R. Crim.P. Rule 31(a). Appellant's argument starts from the proposition that since the district court used a general verdict form,[5] it is not clear whether twelve jurors concurred in a verdict of guilty of "embezzlement" or whether twelve jurors concurred in a verdict of guilty of "misapplication" or whether some jurors felt embezzlement had been proven while others felt that only misapplication had been proven.

Appellant correctly asserts that embezzlement is different from willful misapplication in that embezzlement embraces an aspect of "entrustment" that is not necessarily an aspect of misapplication. *United States v. Sayklay*, 542 F.2d 942 (5th Cir. 1976). In *Sayklay*, the defendant was charged only with embezzlement and the evidence did not support a finding of a breach of a fiduciary duty arising from the entrustment of money. *Sayklay* simply stands for the principle that if a person is charged *only* with embezzlement, there must be proof of entrustment; proof of a misapplication without proof of entrustment will not support a verdict of guilty where only embezzlement is charged. *Sayklay* cannot stand for the converse principle that if a person is charged only with misapplication, proof of embezzlement will not support a verdict of guilty. Proof of embezzlement will support a verdict of guilty of misapplication because any proof sufficient to support embezzlement necessarily is sufficient to support misapplication. Under 18 U.S.C. § 656, "embezzlement" is *the willful taking of an insured bank's money by its employee*, after the money has lawfully come within the control of the person taking it, *with intent to defraud the bank*, while "misapplication" is simply *the willful taking of an insured bank's money by its employee with intent to defraud the bank*. The trial judge gave the jury a very clear, correct charge concerning the elements of a section 656 offense, defining for the jury the difference between embezzlement and misapplication.[6]

---

5. The form of verdict used was "We the jury find the defendant, Blanca Acosta as to count one _____, as to count two _____, as to count three _____." The jury inserted the word "Guilty" in each of the blanks and the verdict was signed by the foreperson.

6. After paraphrasing section 656 the court charged:

So, in order to establish the offense as charged the Government must prove the following essential elements beyond a reasonable doubt:
*First:* That the Defendant was an officer or employee of the bank described in the indictment;
*Second:* That the bank was a national bank or an insured bank;
*Third:* That the Defendant, being an officer or employee, knowingly and willfully embezzled or misapplied funds or credits belonging to the bank or intrusted to its care; and
*Fourth:* That the Defendant acted with the intent to injure and defraud said bank.
A "national bank" includes any national banking association organized under the national banking law; and "insured bank" includes any bank, state or national, the deposits of which are insured by the Federal Deposit Insurance Corporation.
To "embezzle" means the wrongful or willful taking of money or property of someone else after the money or property has lawfully come within the possession or control of the person taking it; and to "take" money or property means to knowingly and willfully deprive the owner of its use and benefit by converting it to one's own use with intent to defraud the bank. However, no particular type of moving or carrying away is required to constitute a "taking." Any appreciable change of the location of the property with the requisite willful intent constitutes a taking whether or not there is an actual removal of it from the owner's premises.
To "misapply" a bank's money or property means a willful conversion or taking by a bank employee of such money or property to his own use and benefit, or the use and benefit of another, whether or not such money or property has been intrusted to his care, and with intent to defraud the bank.
To act with "intent to defraud" means to act with intent to deceive or cheat, ordinarily for the purpose of causing a financial loss to someone else or bringing about a financial gain to one's self.
The charge is the same as set forth as Offense Instruction 9, Committee on Pattern Jury Instructions, District Judges Association (former) Fifth Circuit, *Pattern Jury Instructions (Criminal Cases)* 76–77 (West 1979), with the exception of the properly added fourth element (that defendant acted with the intent to injure and defraud said bank). *United States v. Salinas*, 601 F.2d 1279 (5th Cir.1979).

Any juror who voted for an embezzlement conviction of appellant Acosta under Count I must have been satisfied by the evidence that Acosta, *while a bank employee, willfully took the bank's money with intent to defraud the bank*. This is precisely the same conclusion reached by any juror who voted for a misapplication conviction of appellant Acosta under Count I. In returning their verdict, all the jurors agreed that Acosta had willfully taken the bank's money with intent to defraud the bank, and thus that Acosta was guilty of misapplication; even if in fact some of the jurors also were satisfied the money had lawfully[7] come within Acosta's control, then that did not eliminate unanimity among the jurors. They still were in agreement that Acosta was guilty of misapplication. Had the defendant in *Sayklay* been charged with misapplication, the court's decision surely would have been different; here appellant was charged with misapplication and our decision is not controlled by *Sayklay*.

Our decision is controlled by *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). In *Turner*, the second count of the indictment charged defendant under 26 U.S.C. § 4704[8] with knowingly purchasing, dispensing and distributing heroin not in or from the original stamped package. The "purchase" of heroin is materially different from the "distribution" of heroin, even more so than the differences between embezzlement and willful misapplication. The court, at page 420, 90 S.Ct. at page 654, held:

> The conviction on Count 2 with respect to heroin must be affirmed.... The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged. Here the evidence proved Turner was

distributing heroin. The status of the case with respect to the other allegations is irrelevant to the validity of Turner's conviction.

In reaching this conclusion, the court cited with approval the former Fifth Circuit cases of *Price v. United States*, 150 F.2d 283 (5th Cir.1945) and *Smith v. United States*, 234 F.2d 385 (5th Cir.1956), by which we are also bound.

Appellant argues that *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977), requires us to reverse her conviction. In *Gipson*, the defendant was charged with receiving, concealing, storing, bartering, selling and disposing of a stolen motor vehicle. In response to a question from the jury during deliberations, the court in effect told the jury it could return a verdict of guilty even if there were disagreement among the jurors as to whether the act committed by the defendant was receiving, concealing, storing, bartering, selling or disposing of the vehicle. Defendant objected to this supplemental instruction,[9] and following a conviction sought reversal alleging a violation of his right to a unanimous verdict. The *Gipson* court acknowledged that normally it would be prohibited from inquiring into the jury's verdict:

> ... Courts have long held that a jury verdict cannot be set aside on the grounds that it is inconsistent.... The situation here is different. Gipson's non-unanimity challenge is based not on the result reached by the jury, but on a court instruction that may have judicially sanctioned a non-unanimous verdict. If this was the import of the challenged instruction, then it was infirm, both under Fed. R.Crim.P. 31(a) and the sixth amendment, and the instruction constitutes cause for the reversal of Gipson's conviction, unless it was harmless beyond a reasonable doubt. *Id.* at 457. (*Citations omitted*)

7. Evidence was presented that appellant's receipt of the money may have been with the cooperation of a friendly teller.

8. This statute, prior to its repeal in 1970, prohibited the purchase, sale, dispensing or distribu-

tion of narcotic drugs except in their original stamped package.

9. Appellant Acosta did not object to any aspect of the court's charge.

Since the district court's instruction to the Acosta jury correctly stated the law, we, unlike the court in *Gipson*, are prohibited from inquiring into the jury's verdict. Appellant does not argue, as was argued in *Gipson*, that what the court instructed was erroneous; rather appellant argues that the court omitted an instruction that would have insured that the jury return a unanimous verdict. Appellant failed, however, to object to the court's alleged omission in its charge, and unless that omission was plain error, appellant cannot predicate reversible error thereon.[10] We do not view the claimed omission as plain error.

There is a second reason why *Gipson* does not authorize relief for appellant. As more fully discussed above, we, unlike the *Gipson* court, view any error here as harmless beyond a reasonable doubt. Any juror voting for a verdict of guilty of misapplication was satisfied the government had proved *the defendant, a bank employee, willfully took the insured bank's money with intent to defraud the bank.* This was all that needed to be proved for a conviction of misapplication. Any juror voting for a verdict of guilty of embezzlement was equally satisfied the government had proved *the defendant, a bank employee, willfully took the insured bank's money with intent to defraud the bank.* Any error thus associated with the conviction under Count I, which charged both embezzlement and misapplication, is harmless beyond any reasonable doubt.

There is an even more basic reason why *Gipson* provides no comfort to appellant. The *Gipson* court reached its decision only after finding two distinct conceptual groupings under 18 U.S.C. § 2313, "the first consisting of receiving, concealing and storing, and the second comprised of bartering, selling and disposing." *Id.* at 458. We view 18 U.S.C. § 656 as a single conceptual

grouping. True, a "taking" by *embezzlement* requires proof of entrustment which is not necessary for a "taking" by *misapplication.* But the "ridding oneself" of a vehicle by bartering requires a contract by which one party exchanges the vehicle for other goods, whereas the "ridding oneself" of a vehicle by *disposing* of it does not require such a contract. For example, a person may be guilty of *disposing* of a vehicle by driving it off a cliff into a river. Every *bartering* embraces a *disposing* but the converse is not true. Similarly, every *embezzlement* embraces a *misapplication* but the converse is not true. We simply do not find in section 656 the two distinct conceptual groupings the *Gipson* court found in section 2313. And without two or more such groupings, *Gipson* has no application.

Our next task is the simple one of reviewing the record to determine if it contains sufficient evidence to support a conviction for willful misapplication of the bank's money. Our brief recitation of some of the proof at trial, set forth at the beginning of this opinion, is supported by the record. Ample evidence as to dates and amounts set forth in each count is also in the record. Indeed, the entire record contains overwhelming evidence of appellant's willful misapplication of the bank's money as charged in all three counts of the indictment.

After a thorough review of the record and a careful consideration of the issues on appeal, we AFFIRM the convictions of appellant.

HATCHETT, Circuit Judge, dissenting.

I respectfully dissent because the majority has approached Acosta's contention as though misapplication is a lesser included

---

**10.** Appellant Acosta points out that a defendant's right to a unanimous verdict may not be waived. Such principle might be relevant if we were dealing here with clearly erroneous instructions to the jury that could support a valid argument for lack of unanimity. But what we have in this case is at most a failure to give what appellant argues was a necessary instruction on the subject of unanimity. Surely appellant would concede that, were a district court to fail to give the boiler plate instruction "any verdict you return must be unanimous," a defendant could not attack a verdict for alleged lack of unanimity without having objected to such omission.

offense of embezzlement of bank funds. In taking such an approach, the majority violates three basic and important principles in criminal law; those principles are: (1) for an appellate court to properly affirm a judgment of conviction in a federal criminal case, the appellate court must be sure that *all* twelve jurors agreed on guilt on the *same* offense; (2) misapplication is not a lesser included offense of embezzlement under 18 U.S.C.A. § 656; and (3) lesser included offenses must be specifically found, based on a unanimous verdict, after proper instructions.

The grand jury indicted Acosta, in three counts, in the conjunctive for embezzling and misapplying monies under 18 U.S.C.A. § 656 (1976).[1] The court's instruction to the jury was in the disjunctive (embezzling or misapplying funds).[2] The jury rendered a general verdict of guilty. The issue framed by Acosta before this court is whether the jury instruction authorized the jury to return a non-unanimous verdict in violation of her constitutional right to a unanimous verdict.

The majority divines unanimity of the jury's verdict, in this case, by finding that the major elements of embezzlement and misapplication are the same; common to both offenses, says the majority, is the "willful taking of any insured bank's money by its employees with intent to defraud the bank." In its view, if four jurors found Acosta guilty of misapplication, they would have been satisfied that the evidence showed that Acosta took money willfully from the bank with intent to defraud the bank. Similarly, if the other eight jurors found that Acosta was guilty of embezzlement, those jurors would also have been satisfied that the evidence showed that Acosta willfully took the bank's money with intent to defraud the bank. The majority concludes that since all the jurors agreed that Acosta willfully took the bank's money with an intent to defraud the bank, all twelve jurors necessarily found Acosta guilty of misapplication. As a result, therefore, the jury was unanimous in its general verdict that Acosta was guilty of committing an act in violation of the statute.

Such an approach is nothing more than a holding that says: where a greater offense and a lesser included offense are charged in the same count of an indictment or information, and a guilty verdict is rendered on that count, if a poll of the jury shows that six jurors convicted on the greater offense and six jurors convicted on the lesser included offense, the conviction may be upheld. The conviction is upheld because implicit in the guilty verdict is unanimous agreement on all the elements of the lesser included offense.

**1.** Count I of the indictment charged:

> On or about December 8, 1980, at Miami, Dade County, in the Southern District of Florida, the defendant,
>
> BLANCA ACOSTA
>
> being an employee of the Intercontinental Bank, Westchester Branch, 8755 S.W. 24 Street, Miami, Florida, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, did knowingly, willfully, and with intent to injure and defraud said bank, embezzle, abstract, purloin, and misapply monies and funds entrusted to the custody and care of said bank in that she removed $6,448 from said bank; in violation of Title 18, United States Code, Section 656.

Counts II and III were similarly worded with changes in the dates and amounts of money. Title 18 U.S.C.A. § 656 provides in part:

> Whoever ... embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of [a member] bank or any moneys, funds, assets or securities intrusted to the custody or employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both....

**2.** After paraphrasing section 656, the court charged, in relevant part:

> So, in order to establish the offense as charged the Government must prove the following essential elements beyond a reasonable doubt:
>
> *First:* That the Defendant was an officer or employee of the bank described in the indictment;
>
> *Second:* That the bank was a national bank or an insured bank;
>
> *Third:* That the Defendant, being an officer or employee, knowingly and willfully embezzled or misapplied funds or credits belonging to the bank or intrusted to its care; and
>
> *Fourth:* That the Defendant acted with the intent to injure and defraud said bank.

Although this is a correct instruction for misapplication, it is improper for embezzlement.

The majority's approach is flawed. The majority misapprehends the claim being made on appeal and, therefore, cites authority that is inapplicable to this case. Acosta's principal claim on appeal is that the district court's jury instruction authorized a non-unanimous verdict. The majority recasts this claim into a contention that no reasonable jury could have found, based on the evidence, that Acosta did not take the money with an intent to defraud the bank. None of the cases cited by the majority deals with a challenge to a court's jury instructions as authorizing a non-unanimous verdict. This case, however, deals with the question of the amount of latitude to be given trial judges in the giving of jury instructions in light of the unanimity requirement of the constitution. This case is controlled by the former Fifth Circuit's opinion in *United States v. Sayklay,* 542 F.2d 942 (5th Cir.1976).

The majority attempts to distinguish *Sayklay* by reading its holding to be that a person charged only with embezzlement can only be found guilty of embezzlement, but when embezzlement is combined with another offense the jury may lawfully convict on either offense or on a combination of the offenses.[3] This is a very limited reading of *Sayklay.* *Sayklay* also stands for the proposition that Congress's intent in drafting section 656 was to make embezzlement a separate offense from misapplication, requiring an additional element and separate proof. The *Sayklay* court explained:

'Embezzlement' is a technical term, imbued with a specific meaning. *To up-*

*hold a conviction for embezzlement under these facts would confuse the distinction that Congress clearly drew between embezzlement and other forms of conversion.* And it remains true that penal statutes are to ‘be strictly construed, with ambiguities resolved in favor of leniency. The defendant's wrongful actions render her an undeserving candidate for application of the principle, but doubtless most who require its assistance have been and will be undeserving. *More is at stake here than convicting a wrongdoer of something: fidelity to Congress's clear purpose* and refusal to convict any one of a crime of which he has not been—and cannot be, on the facts—proved guilty.

*Sayklay,* 542 F.2d at 944 (citations and footnotes omitted) (emphasis added). In the absence of proof that Acosta converted funds that *were properly entrusted to her,* she has no criminal liability based on embezzlement. It is no answer to say that all jurors must have found that Acosta took the money from the bank with an intent to defraud the bank, or, even absent proof of embezzlement, i.e., proof of an entrustment or lawful possession of the monies,. adequate proof existed of misapplication; therefore, the jury verdict is unanimous.

A unanimous verdict is a prerequisite to a valid conviction in a federal criminal case. Fed.R.Crim.P. 31(a). This is no mere rule of procedure; unanimity has its constitutional basis in the sixth amendment. *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)[4]; *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

**3.** If the majority is correct, then our circuit, after the majority's opinion, could uphold a conviction where (1) the government charged only misapplication in count I and charged only embezzlement in count II of an indictment, (2) the jury returned verdicts of guilty on both counts, (3) a poll showed that six of the jurors found guilt only as to count I while the other six found guilt only as to count II. Under the majority's reasoning in this case, the appellate court would find that all of the jurors necessarily found the defendant guilty of count I; therefore, the conviction on count II would be re-

versed, but the conviction on count I would be affirmed.

**4.** In explaining his doubt that all the elements of the sixth amendment jury trial provisions are binding on the states, Justice Powell outlined the historical and precedential basis for the sixth amendment requirement of a unanimous jury verdict in federal criminal cases:

In an unbroken line of cases reaching back into the late 1800's, the Justices of this Court have recognized, virtually without dissent, that unanimity is one of the indispensable

In *United States v. Gipson*, the court, on similar facts, addressed the majority's proposition that a general verdict can be unanimous if all jurors voted for either guilty of embezzlement or guilty of misapplication.[5] The former Fifth Circuit cautioned:

A superficial analysis of the problem might yield the conclusion that since every juror was still required to find all elements of the charged offense(s) present in order to convict defendant, there was necessarily unanimous jury agreement as to his guilt. This reasoning loses its cogency, however, when the policy underlying the unanimous jury right is taken into account.

*Gipson*, 553 F.2d at 457. *See Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

The unanimous jury right is an important provision in criminal law. The *Gipson* court illustrated the problem that can be presented by following the majority's rule.

A single criminal code section might prohibit a number of distinct acts; for example, a traffic control statute might prohibit (a) speeding, (b) driving without lights at night, (c) making a turn from the wrong lane, and (d) failing to use turn signals. At a trial for violating the statute, the prosecution might present some evidence that each of the prohibited acts was performed by the defendant, and the judge might charge the jury that the defendant would be guilty of violating the statute if the jury found he had done any one of the prohibited acts. If three members of the jury found that the defendant was guilty of speeding but had not committed any of the other prohibited acts, and three other jurors found that the only illegal act the defendant committed was driving without lights at night, and three other jury members found that the only prohibited act the defendant performed was making a turn from the wrong lane, and the final three jurors found that the only wrong the defendant committed was failing to use his turn signals, the defendant's right to a unanimous verdict would be violated if the jury found him guilty of violating the code section. The prosecution would not have convinced *all* of the jurors that the defendant committed one or more of the unlawful acts. Indeed, nine of the jurors would have found that the defendant did *not* perform each of the prohibited acts.

*Gipson*, 553 F.2d at 458.

The majority's lesser included offense approach is wrong. Misapplication is not a lesser included offense of embezzlement. To be a lesser included offense under Federal Rule of Criminal Procedure 31(c), an offense must "consist of fewer elements than the greater offense charged, it must bear a lesser penalty than the greater offense, and the two offenses must contain such common elements that the greater offense cannot be committed without also committing the lesser offense." 9 Fed. Proc.L.Ed. § 22:848, p. 422 (1982). Misapplication does not "bear a lesser penalty than the greater offense charged."

Even if the lesser included offense approach is accepted the verdict rendered in

features of *federal* jury trials. In these cases, the Court has presumed that unanimous verdicts are essential in federal jury trials, not because unanimity is necessarily fundamental to the function performed by the jury, but because that result is mandated by history. The reasoning that runs throughout this Court's Sixth Amendment precedence is that, in amending the Constitution to guarantee the right to jury trial, the framers desired to preserve the jury safeguard as was known to them at common law. At the time the Bill of Rights was adopted, unanimity had long been established as one of the attributes of a jury conviction at common law. It therefore seems to me, in accord with both history and precedent, that the Sixth Amendment requires a unanimous jury verdict to convict in a federal criminal case.

*Johnson*, 406 U.S. at 369–71, 92 S.Ct. at 1636–37 (citations and footnotes omitted).

5. Defendant was convicted for receiving, concealing, storing, bartering, selling, or disposing of a stolen vehicle in violation of 18 U.S.C. § 2313. The court instructed the jury that their verdict would be unanimous even if all twelve agreed that he had done one of those acts, but there was no agreement that he had done the same act. The former Fifth Circuit held that this instruction was not harmless beyond a reasonable doubt. *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977).

this case would still be invalid. If misapplication were a lesser offense, an instruction would be required (1) characterizing embezzlement as the greater offense, (2) indicating that Acosta could be found guilty of a lesser included offense, (3) defining all lesser included offenses, and (4) instructing the jury to specifically indicate the offense found. *See, e.g., United States v. Harvey,* 701 F.2d 800 (9th Cir.1983) (trial court instructed jury that it was to reach a unanimous verdict in favor of defendant on the greater charge before it could consider lesser included offenses); *United States v. Tsanas,* 572 F.2d 340 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978) (instruction requiring unanimous verdict of not guilty of greater offense before allowing jury to move to lesser offense was not plain error); 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 31.03 (June 1984 revision). No instruction was given in this case on a greater or lesser offense theory. No verdict form for such a finding was provided. The jury did not specify which offense it found. Indeed, most telling is the fact that the district court in its written judgment, never mentioned misapplication; the district court declared Acosta guilty of embezzlement. We are left guessing whether *all* the jurors agreed on anything.