986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmy D. EASTERLING, Defendant-Appellant.
 Nos. 92-5421, 92-5472.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1993.
 
 Before KEITH and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 A jury convicted Jimmy Easterling of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Easterling appeals, raising four issues: 1) whether the district court abused its discretion when it denied Easterling's motion to dismiss the superseding indictment; 2) whether the district court properly denied Easterling's motions for judgment of acquittal on Count I; 3) whether the district court properly denied Easterling's motion to dismiss Count II; and 4) whether the district court abused its discretion when it denied Easterling's motion for mistrial.
 
 
 2
 Because we find that the district court committed no error, we shall affirm.
 
 I.
 
 3
 On July 24, 1991, Easterling was indicted for two counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count I charged Easterling with possessing a Rossi revolver in June 1990, while Count II charged him with possessing that same firearm in September 1990. Easterling pled "not guilty" to both counts. After determining that both counts involved the same weapon and constituted one crime, the district court required the government to elect which count it wished to prosecute.
 
 
 4
 On September 19, 1991, the government filed a superseding indictment. Count I charged Easterling with possession of the Rossi revolver from June through September 1990, and Count II charged him with possessing a Smith & Wesson revolver, from April through June 1991. Easterling filed a motion to dismiss the superseding indictment, claiming that the indictment violated his Fifth Amendment right against double jeopardy and that it was filed after he pled "not guilty" to the original indictment in order to put "undue pressure" on him. The district court denied the motion, and Easterling pled "not guilty" to the superseding indictment.
 
 
 5
 During the ensuing jury trial, Easterling made two motions for judgment of acquittal on Count I and a motion to dismiss Count II, but all motions were denied. The jury found Easterling guilty on both counts of the superseding indictment. On March 10, 1992, the court sentenced Easterling to two prison terms for each count, 35 months and 52 months, to be served consecutively. Easterling filed a notice of appeal on March 20, 1992.[1]
 
 
 6
 In his first assignment of error, Easterling argues that the government "did not overcome its burden in establishing [sic] that the Superseding Indictment was not sought because of a vindictive motive because Easterling plead not guilty to the original indictment and/or because Count two of the original indictment was dismissed upon Easterling's motion to dismiss." Thus, Easterling claims, the district court should have dismissed the superseding indictment.
 
 
 7
 We review the district court's refusal to dismiss the indictment for abuse of discretion. United States v. Overmyer, 899 F.2d 457, 465 (6th Cir.), cert. denied, 111 S.Ct. 344 (1990). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. See In re Bendectin, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 8
 As a general rule, a prosecutor may seek a superseding indictment at any time prior to the trial as long as his purpose is not to harass the defendant. See United States v. Edwards, 777 F.2d 644, 649 (11th Cir.), cert. denied, 475 U.S. 1123 (1985). "A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." United States v. Anderson, 923 F.2d 450, 453 (6th Cir.), cert. denied, 111 S.Ct. 1633 (1991). If a court finds that a superseding indictment is the result of vindictiveness, "the ordinary remedy is to bar the augmented charge." United States v. Andrews, 633 F.2d 449, 455 (6th Cir.1980) (en banc ), cert. denied, 450 U.S. 927 (1981).
 
 
 9
 Easterling argues that the prosecutor filed the superseding indictment in retaliation because Easterling pled "not guilty" to the original indictment and because he was successful in compelling the government to elect which count it intended to prosecute. Easterling cites United States v. Ruesga-Martinez, 534 F.2d 1367 (9th Cir.1976), to support his position that the government should bear the burden of proving it did not act vindictively when it filed the superseding indictment.
 
 
 10
 Easterling's argument is without merit. This court has rejected the Ninth Circuit's standard for evaluating claims of prosecutorial vindictiveness. Andrews, 633 F.2d at 453 n. 4, 457. The standard in this circuit for evaluating claims of prosecutorial vindictiveness is "whether, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges." Id. at 453. If the court finds that there is "a realistic likelihood of vindictiveness," the government bears the burden of disproving it. Id. at 456.
 
 
 11
 Nothing in the record indicates that the district court was presented with any fact suggesting a "realistic likelihood of vindictiveness" on the part of the prosecutor. We simply disagree with the argument that the filing of the superseding indictment, following as it did the court's order requiring the prosecutor to elect one of the originally-charged counts, is per se, an indication of prosecutorial vindictiveness. Therefore, the burden never shifted to the government to rebut defendant's charges of vindictiveness.
 
 II.
 
 12
 Easterling's second assignment of error is that the government failed to prove beyond a reasonable doubt that Easterling knowingly possessed the Rossi revolver, and that none of the evidence connected the Rossi firearm he allegedly possessed with the Rossi actually introduced into evidence at trial. Therefore, according to Easterling, the district court should have granted his motion for judgment of acquittal on Count I.
 
 
 13
 "The proper standard for evaluating a motion for judgment of acquittal is whether, considering the facts in the light most favorable to the government, there is evidence from which a jury might find the defendant guilty beyond a reasonable doubt." United States v. Gorman, 807 F.2d 1299, 1303 (6th Cir.1986), cert. denied, 484 U.S. 815 (1987).
 
 
 14
 The evidence revealed that, on September 28, 1990, Delores Helton, Easterling's sister, turned in a Rossi revolver to Bureau of Alcohol, Tobacco and Firearms Agent Simms. When Simms investigated, he learned that the Rossi had been transported through interstate commerce before eventually reaching Norvin Terry's hardware store in West Liberty, Kentucky. Both Simms and Terry testified that the Rossi was sold to an individual who later gave it back to Terry in a trade. Terry subsequently sold the Rossi as a used gun to Junior Benton, a friend of Easterling.
 
 
 15
 Benton's testimony was that he purchased a Rossi revolver from Terry's hardware store in early 1990. Benton testified that he agreed to buy the revolver in his name for Easterling, who could not purchase the weapon himself because of his status as a convicted felon. According to Benton, Terry was aware that Benton was the "straw man" for the gun purchase because Easterling paid for the gun and carried it from the store. Terry confirmed that Easterling was in the store when Benton purchased the Rossi revolver; however, he denied that he knew for certain whether Benton bought the revolver for Easterling. Terry also testified that he was aware that Easterling had a prior felony conviction and was, therefore, prohibited from purchasing a gun himself.
 
 
 16
 To prove Easterling's guilt on each count, the government was required to show that Easterling had been convicted of a crime punishable by imprisonment for a term exceeding one year, that he possessed a firearm, and that the firearm had a nexus to interstate commerce. 18 U.S.C. § 922(g)(1). On appeal, Easterling does not argue that the government failed to prove that he was a convicted felon or that the firearm had a nexus to interstate commerce. He contends only that the government failed to prove he knowingly possessed the Rossi revolver. We find, however, that a rational jury could conclude, beyond a reasonable doubt, that Easterling knowingly possessed the Rossi.
 
 
 17
 Benton testified that Easterling used Benton as his "straw man" to purchase the Rossi from Terry's store. Furthermore, Agent Simms's testimony and Terry's testimony provided evidence that this was the same Rossi that Easterling's sister turned over to ATF Agent Simms and that was received in evidence at trial. From this, a rational jury could reasonably conclude that Easterling unlawfully possessed the Rossi that was given to Agent Simms by Easterling's sister. We find, therefore, that the district court did not err when it denied Easterling's motion for acquittal on Count I.
 
 III.
 
 18
 At the close of the government's case, Easterling asked the court to dismiss Count II on the basis of insufficient evidence. Easterling claims that the district court erred when it denied his motion to dismiss.
 
 
 19
 "In a criminal case the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 20
 State Troopers Lockhard and Lewis and a 911 dispatcher testified concerning the circumstances surrounding Easterling's alleged possession of the Smith & Wesson revolver. According to their testimony, Tamera Carpenter, the daughter of Easterling's girlfriend, Barbara Carpenter, telephoned 911 to report an emergency during the early morning hours of June 18, 1991. Tamera told the dispatcher that she could hear Easterling fighting with her mother and that she believed he was threatening Barbara with a gun. When Trooper Lockhard arrived at the scene, Barbara and Tamera told him that Easterling hid the gun behind a barn at the back of the house because he had learned that Tamera had called 911. With Barbara's help, Lockhard located a Smith & Wesson revolver behind the barn.
 
 
 21
 Easterling's defense was that he unknowingly brought the Smith & Wesson revolver to Barbara's house in a beer case and that he never threatened Barbara with it. JoAnn Minix testified that the Smith & Wesson was her gun and that she had placed it in a case of beer at her home without Easterling's knowledge. According to Minix, Easterling and his friend took the case of beer from her home to Barbara Carpenter's not knowing the gun was in the case.
 
 
 22
 At trial, Barbara Carpenter testified that Easterling brought a case of beer to her home on June 18 not knowing that it contained the revolver. She admitted that they had been arguing, but she denied that he threatened her with a gun. Tamera Carpenter denied that she told the dispatcher Easterling threatened her mother with a gun. Through cross-examination, it was revealed that the trial testimony of Barbara and Tamera was inconsistent with their grand jury testimony. Additionally, a taped telephone conversation between Barbara and Lockhard was played to the jury. In that conversation, Barbara inquired as to how she could retrieve the confiscated revolver from the police. She also told Lockhard that Easterling had pointed the gun at her on the night of June 18 and that JoAnn Minix, Easterling's sister, owned the gun and had given it to Easterling.[2]
 
 
 23
 The evidence sufficiently supported a finding that Easterling possessed the Smith & Wesson. A rational jury could have concluded on the basis of the testimony provided by the law enforcement officials and the taped telephone conversation that Easterling used a gun to threaten his girlfriend, Barbara. A reasonable jury could have rejected the trial testimony of Barbara and her daughter as not credible and as inconsistent with earlier testimony and statements. Similarly, a rational jury could very well have rejected the testimony of Minix. The district court did not err when it denied Easterling's motion to dismiss Count II.
 
 IV.
 
 24
 In his final assignment of error, Easterling argues that the district court should have granted his motion for mistrial because the government elicited improper testimony from Easterling's probation officer. The government argues that the district court did not abuse its discretion when it denied the motion for mistrial because Easterling was not prejudiced by the testimony.
 
 
 25
 The district court permitted the probation officer, Mr. Brown, to testify that Easterling was a convicted felon.[3] However, the court ruled that the Brown could not inform the jury that he was Easterling's probation officer because of the prohibition of Ky.Rev.Stat. § 439.510, which provides in part:
 
 
 26
 All information obtained in the discharge of official duty by any probation or parole officer shall be privileged and shall not be received as evidence in any court.
 
 
 27
 On direct examination, the government asked Brown if he had supervised Easterling. Brown responded that he was Easterling's parole officer. The court sustained Easterling's objection to the question and response because it directly violated the court's prior ruling. The court also instructed the jury to disregard the improper question and answer. Easterling moved for a mistrial, but the motion was denied.
 
 
 28
 This court reviews a district court's denial of a motion for mistrial for abuse of discretion. United States v. Cameron, 953 F.2d 240, 243 (6th Cir.1992). "A defendant may move for a mistrial where there is a legitimate claim of seriously prejudicial error." United States v. Moore, 917 F.2d 215, 220 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991). When reviewing a district court's denial of a defendant's motion for mistrial, this court is primarily concerned with fairness to the defendant. United States v. Buckley, 934 F.2d 84, 89 (6th Cir.1991). " '[I]f ... the trial was not rendered unfair, [we will not conclude] that the district court ... abused its discretion by denying [the] motion for a mistrial.' " Id. (citation omitted).
 
 
 29
 Easterling argues that a mistrial was in order merely because the government asked a question that the district court previously had ruled would not be allowed. This is not enough to warrant a mistrial. Easterling does not point to any resulting prejudice from the question and answer, and we think no prejudice resulted to render the trial unfair. The district court instructed the jury to ignore the remarks thereby limiting any harm that might have resulted. We find that the district court did not abuse its discretion when it denied the motion for mistrial.
 
 IV.
 
 30
 Because we find that the district court committed no error, we shall AFFIRM the conviction and sentence.
 
 
 
 [1]
 Because of a typographical error in the original judgment order, an amended judgment order was filed on March 23, 1992. On April 2, 1992, Easterling filed a second notice of appeal from the judgment of March 12 as amended by order of March 23
 
 
 [2]
 It is not claimed on appeal that this testimony was inadmissible as hearsay
 
 
 [3]
 The government also introduced a certified copy of Easterling's 1972 conviction as evidence that he was a convicted felon